UNITED STATES *v.* AMERICAN SMELTING & REFINING Co. (No. 1365).[1]

COPPER MATTE, REGULUS OF COPPER.

The merchandise is produced by smelting metalliferous rock containing sulphides of lead, copper, and iron. It was stipulated that the importations were mattes and that "matte" and "regulus" are interchangeable terms. Now the uncontradicted testimony shows that mattes containing the percentages of copper, lead, iron, and sulphur found in these importations were known to the wholesale trade before and after the passage of tariff act of 1909 as copper mattes. They must be accepted to be copper mattes, and as such being regulus of copper they were entitled to free entry.

---

[1] Reported in T. D. 34937 (27 Treas. Dec., 517).

United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 35013 (T. D. 34279).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.
*Gerry & Wakefield* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain merchandise designated in the invoice as copper matte and classified by the collector of customs at Perth Amboy, N. J., as lead-bearing ore was assessed for duty at 1½ cents per pound under the provisions of paragraph 181 of the tariff act of 1909, which paragraph, in so far as pertinent, reads as follows:

181. Lead bearing ore of all kinds, one and one-half cents per pound on the lead contained therein; * * *.

The importer protested that the importation was duty free as copper matte or regulus under the following provision of the free list of said act:

(Free List). That on and after the day following the passage of this act, * * * the articles mentioned in the following paragraphs shall, when imported into the United States * * * be exempt from duty:

\*          \*          \*          \*          \*          \*          \*

544. Copper ore; regulus of, and black or coarse copper, and copper cement; * * *.

The Board of General Appraisers sustained the protest and the Government appealed.

The merchandise in question was produced by fusing or smelting ore or metalliferous rock or minerals containing sulphides of lead, copper, and iron. It appears that when ores bearing sulphides of lead, copper, and iron are fused—that is to say, reduced to a melted state—the slag or dross, refuse and scoria separates from the other constituents of the ore and floats at the top. So much of the lead as is freed from sulphur falls to the bottom of the crucible, leaving the fused sulphides of lead, copper, and iron floating between the lighter slag and the heavier lead. While in the melted state the slag, metallic sulphides, and lead may be either tapped at their respective levels and withdrawn, or the lead alone may be drawn off from the bottom of the crucible, leaving the slag and metallic sulphides to solidify in the crucible in their relative positions. In either event, the metallic sulphides, separated from the slag and metallic lead, constitute, according to the testimony, what is known as matte.

On the hearing before the board it was stipulated that the importations covered by the several protests were mattes, and that "matte" and "regulus" are interchangeable terms having the same meaning.

From the analyses submitted to the board and admitted to be correct it appears that the different mattes covered by the several protests contained the following percentages of metal and sulphur:

Protest No. 713217: Lead, 38.30; copper, 38.35; iron, 0.3; sulphur, 13.35.
Protest No. 713218: Lead, 17.20; copper, 18.40; iron, 28.00; sulphur, 20.80.
Protest No. 713219: Lead, 17.80; copper, 18.59; iron, 25.6; sulphur, 16.57.
Protest No. 724769: Lead, 23.50; copper, 48.3; iron, 5.9; sulphur, 15.10.
Protest No. 724770: Lead, 38.80; copper, 38.57; iron, 0.5; sulphur, 13.0.
Protest No. 724772: Lead, 18.80; copper, 17.91; iron, 28.07; sulphur, 17.40.

The admitted facts leave only one question to be determined, and that is whether the goods may be properly considered as *copper* mattes. If they are copper mattes, then under the stipulation that regulus is a matte, the merchandise was clearly admissible free of duty as regulus of copper.

Heinrich O. Hofman, a witness for the importer, testified that in mattes of the composition established by the analyses the value of the copper largely predominated, and that such mattes would be sent to the copper department of the reduction works for treatment. This testimony was corroborated by importer's witness Ledoux, who stated that he had sold hundreds of thousands of tons of mattes, and that mattes containing 38 per cent lead, 38 per cent copper, 13 per cent sulphur, and a small percentage of iron would be purchased on the basis of the copper value only. Colcord, a practical metallurgist and assistant superintendent for 15 years of smelting and refining plants, testified for the importer that copper was worth four times as much as lead, and that in smelters with which he was connected no attempt at all was made to recover the lead found in such mattes as those imported. According to this witness, the percentage of lead found in the goods imported was a detriment to the mattes and reduced their value.

The Government witnesses agreed with those of the importer that mattes of the kind in controversy were purchased for the copper which they contained and that any lead recovered from them would be a secondary matter. Indeed, Willet S. Morse, one of the Government witnesses, testified that the recovery of the lead contained in mattes such as those in question was a recent development in smelting and refining operations and that it had not yet passed the experimental stage.

From the testimony on both sides of the case it would seem, therefore, that the mattes under consideration are valuable chiefly, if not exclusively, for the copper they contain, and that if they are to be differentiated in any way from mattes in general they should be designated as copper mattes.

But, however that may be, it is established by the uncontradicted testimony of Ledoux and Colcord that mattes containing the per-

centages of copper, lead, iron, and sulphur found in the importation were known to the wholesale trade of the country and designated by it at and prior to the passage of the tariff act of 1909 as copper mattes. To the same effect was the testimony of Willet S. Morse, executive officer of the Perth Amboy branch of the American Smelting & Refining Co. and a Government witness, who stated that the goods imported were copper mattes containing lead.

In our opinion the goods involved in this appeal are copper mattes and are entitled to free entry as regulus of copper, inasmuch as the terms "copper mattes" and "regulus of copper" have admittedly come to mean the same thing.

The decision of the Board of General Appraisers is therefore *affirmed.*