United States v. Consolidated Kansas City Smelting & Refining Co. (No. 1743).[1]

1. Regulus of Copper—Copper Matte.
    That "regulus of copper" and copper matte are interchangeable terms is established by a line of judicial and administrative decisions, sanctioned by the reenactment of the term "regulus of copper" in three successive subsequent tariff acts.

2. Construction, Paragraph 153, Tariff Act of 1913—Lead.
    A matte with a heavy content of lead sulphide can not be dutiable under paragraph 153, tariff act of 1913, as "Lead dross, lead bullion or base bullion, lead in pigs or bars, lead in any form not specially provided for in this section." The general terms of the paragraph are restricted by the preceding specific enumerations to lead of the same general character, namely, lead metal.

---

[1] T. D. 37495 (34 Treas. Dec., 48).

3. "REGULUS OF COPPER"—COPPER MATTE.

A matte composed more largely of lead than copper in quantity, more largely of silver than either lead or copper in value, and *not ready for the process of smelting to recover the copper content* can not properly be called a *copper* matte, and is not admissible free of duty as "regulus of copper." (Par. 461, tariff act of 1913.) It is dutiable by similitude as a lead-bearing ore under paragraph 152.

## United States Court of Customs Appeals, December 12, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7911 (T. D. 36439).

[Reversed.]

*Bert Hanson*, Assistant Attorney General (*John J. Mulvaney*, special attorney, of counsel), for the United States.
*Gerry & Wakefield* for appellees.

[Oral argument Oct. 18, 1917, by Mr. Mulvaney and Mr. Wakefield.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation was assessed for duty as lead-bearing ore under the first clause of paragraph 152, tariff act of 1913, which reads as follows:

Lead-bearing ores of all kinds, containing more than 3 per centum of lead, ¾ cent per pound on the lead contained therein.

The Board of General Appraisers sustained the protest claiming the importation free of duty as regulus of copper under paragraph 461.

In this court it is not claimed that the merchandise is dutiable as an ore, but it is contended that it falls within the provisions of paragraph 152 by similitude, and alternatively it is claimed to be dutiable under the provisions of paragraph 153 "for lead in any form not specially provided for in this section."

The question of what regulus of copper is was before the court in United States *v.* American Smelting & Refining Co. (5 Ct. Cust. Appls., 398; T. D. 34937). Certain matters may be deemed as settled by that decision.

First, in that case it was conceded on the argument by counsel for Government and for the defendant that "regulus" and "matte" were interchangeable terms, having the same meaning, and the question which stood for decision, therefore, was whether the mattes there in question were copper mattes. The concession that "matte" and "regulus" were synonymous terms as applied to copper mattes such as were there involved was entirely justified by the treatment of the subject by the Treasury Department, by the Board of General Appraisers, and by the courts through a long period of time, beginning with the case of T. D. 9528, which was followed by T. D. 10043, T. D. 16966, T. D. 20326, and the case of Spencer *v.* Philadelphia Smelting & Refining Co. (124 Fed., 1002).

These authorities had, prior to the presentation of the question to this court in the case of United States *v.* American Smelting & Refining .Co., supra, determined that regulus of copper and copper matte were interchangeable terms, and in the face of such construction of the term "regulus of copper," the Congress had reenacted three different tariff laws in which the term was employed; presumably with the meaning attached thereto which the courts and the administrative officers of the Government had accorded to it.

There still was left for decision in the American Smelting & Refining Co. case, supra, the question of whether the mattes there under consideration were copper mattes, as, if they were, and regulus of copper and copper matte were synonymous, it resulted that the importation there considered was regulus of copper.

·It was found by the court in that case that the matte there in question was copper matte. That was determined upon the finding by the court that the copper was worth four times as much as the lead, and upon testimony tending to show that no attempt was made to recover the lead found in such mattes as those imported, and further that the percentage of lead found in the goods imported was a detriment to the mattes and reduced their value; that the Government witnesses so far agreed with those of the importer as to declare that the mattes there in question were purchased for the copper which they contained, and that any lead recovered from them would be a secondary matter, and one of them testified that the recovery of the lead contained in the mattes such as those in question was a recent development in smelting and refining operations, and that it had not yet passed the experimental stage. It was therefore found that the mattes under consideration were valued chiefly if not exclusively for the copper which they contained, and if they were to be differentiated from mattes in general, they should be designated as copper mattes.

It was further found that by uncontradicted testimony it was shown that the mattes containing the percentages of copper, lead, iron, and silver found in the importation were known to the wholesale trade of the country and designated by it at and prior to the passage of the act of 1909 as copper mattes, and by one of the Government witnesses that the goods imported were copper mattes containing lead; and upon this testimony it was found that the mattes were copper mattes.

The board appeared to be of the opinion that this decision was res adjudicata or stare decisis and conclusive of the case in hand. A most careful scrutiny of the testimony in this case and consideration of the results to follow upon the adoption of the contention of the importers leads us to the conclusion that this case should be differentiated from the American Smelting Co. case.

We rest our conclusion upon the view that, properly construed the testimony in the present record does not establish that the mattes in question are copper mattes, such as may be considered regulus of copper. In the first place, the percentage of lead in the present importations is very much greater than in any of the protests involved in the American Smelting & Refining Co. case, supra. In the present case in every importation the lead content largely preponderates in weight over the copper content in the matte, in some instances being more than double, in one instance preponderating in value over the copper content two and one-half times, in many of the cases being almost as valuable as the copper content, and in none of them being in value insignificant. Not only this, but in all cases the silver content in value far exceeds the copper. So that we have presented here a case in which the copper content is neither the predominant content in value of the metals contained in the matte nor is it the predominant, major product of metal in the matte as between lead and copper.

That is not all. The present record shows that it is not only feasible but commercially practicable and economical to treat the present matte in a lead furnace for the recovery of a large proportion at least of the lead product, and that such process, without impairing the copper content, makes such content more valuable than in its present form, for the reason that the lead in considerable quantities in the matte is objectionable for regulus of copper.

Historically, it would seem from the testimony in this case of one of the officers of the defendant, called by the Government, that regulus of copper is copper ore from which impurities have been removed so far as can be done; that is, after the lead has been driven out in slag, leaving the copper as free of lead as possible. Such was the understanding of H. R. Wagner, a witness called by the Government, who stated that copper matte is to-day, as nearly as he could discover, exactly similar to and covers precisely the same substance as regulus of copper in the Welsh system of smelting, and he described the Welsh system of smelting as producing regulus of copper in the manner stated, and that the term regulus of copper originated with the Welsh process.

By extension, the term has been considered as embracing all matte of which copper is the only recoverable ingredient in quantity, and up to the date of the decision by this court of United States *v.* American Smelting & Refining Co., supra, the copper matte which was dealt with and treated as regulus of copper consisted of matte which was in practice used primarily for the recovery of the copper, and whatever recovery of lead there might be, if any, was incidental, the lead adding nothing to the value of the matte, but being apparently considered a detriment to it.

Regulus of copper may well be considered as including mattes of copper and lead which could not be recovered except in the process of recovering the copper. But that is not this case. The mattes here considered showed large percentages of lead, as before stated. In the case of the present importation the lead content exceeds the copper content largely in weight, although the copper in most of the importations is of greater value.

But what is we think conclusive of this case is that the matte in question is only an intermediate matte in the production of the matte which is ultimately smelted to reclaim the copper. The testimony in this case shows that it is commercially profitable and in every way practicable to smelt the matte which is here in question and thereby recover a large percentage of lead by this smelting process without impairing or injuring in any way the copper ingredient, and not only this, but produce a matte from which the copper is more easily and cheaply recoverable, as the testimony conduces to show that the elimination of lead from the ore is the first step toward recovering the copper and indeed toward producing regulus of copper as the process was formerly employed. It may be that by modern processes a matte with a greater percentage of lead than formerly may be worked through a copper smelter by blowing off the lead content, some of which may be reclaimed by the bag process, but in treating the present importation that is not what is done in most instances. What is done in most instances, and what might be done in all cases with the present ore, according to the testimony in this case, is to put the importation through a lead smelter a second time and recover the lead and then there would be left a copper matte which more closely answers to the call of the term regulus of copper as known scientifically. This matte then, from which the lead has been as far as practicable commercially eliminated, leaves a copper product as nearly free of lead as it is reasonably practicable to accomplish it, and becomes the copper matte or regulus. But in its former state, when it is still susceptible to being more properly treated for the recovery of the lead, by which process the character of the matte as a copper product is enhanced, it can not appropriately be called regulus of copper.

There was an effort to show that this was commonly known as copper matte, or commercially known as copper matte, neither of which efforts seems to have been crowned with any marked success. The truth of the matter is that the parties who attempted to define regulus of copper or copper matte were not agreed. Some of them testified that it was not proper to designate this as copper matte without qualification, which of course is too obvious for elaboration. As a matter of fact as between copper and lead it was a lead matte, if the question of value is discarded. If the preponderance of value

is relied on, it becomes a silver matte. Testimony that this is a copper matte when in some instances the lead not only largely exceeds in quantity but in value the copper content taxes credulity. The truth is that it is a matte composed more largely of lead than copper in quantity, more largely of silver than either in value, *and not ready for the process of smelting to recover the copper content.* There is very little propriety in denominating it a copper matte in that state. But when the now common process of recovering the lead is resorted to and the copper remaining in contact with some traces of lead is presented in the form of a matte, there is *entire* propriety in calling this copper matte or regulus of copper, the terms being interchangeable.

Having determined that the importation is not regulus of copper within the paragraph claimed, it remains to consider the question of the proper rate. We are not willing to accede to the contention that the sulphide of lead present in these importations is covered by paragraph 153, which provides for "lead dross, lead bullion or base bullion, lead in pigs or bars, *lead in any form not specially provided for in this section* * * *." We think these general terms are restricted by the preceding specific enumerations to lead of the same general character, namely, lead metal. We think, however, that lead sulphide in the matte in question so closely resembles the lead content of lead-bearing ores as to be dutiable by similitude under paragraph 152, as assessed.

The decision of the Board of General Appraisers is reversed and the action of the collector *affirmed.*