UNITED STATES *v.* NASSAU SMELTING & REFINING WORKS, LTD.
(No. 3239)[1]

United States Court of Customs and Patent Appeals, January 15, 1930

*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham* and *Fred J. Carter,* special attorneys, of counsel), for the United States.
No appearance for appellee.

[Oral argument December 3, 1929, by Mr. Carter]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court sustaining the importing company's protest and holding the imported merchandise involved free of duty under paragraph 1555 of the Tariff Act of 1922 as "Composition metal of which copper is the component material of chief value, not specially provided for."

The appraiser reported that the importation was composition metal in ingots and contained 13.50 per centum lead. It also contained 20 per centum tin, 1.50 per centum zinc, and 65 per centum copper, and copper was the component of chief value. Duty was assessed on the lead contained therein in accordance with the provision of paragraph 393 of said act at the rate of 2⅛ cents per pound.

There is no brief for appellee in this court, but its position may be stated from the following which is found in the protest:

Paragraph No. 1555 shows composition metal, copper chief value, to enter free. The copper contents of the above importation represent its chief value, and no duty can properly be charged on any of its other contents.

There are other composition metals in which copper is not chief value, and when these contain lead, the tariff clearly provides that the lead contents shall pay a duty of 2⅛¢ per lb. If that had also been the intention in reference to composition metal having copper chief value, the tariff undoubtedly would also so state. However, when the tariff clearly provides that composition metal shall enter free so long as copper is chief value, we do not see how it, in fact, can be made subject to duty on one of its lesser constituents. So long as it is made to pay any duty whatever, it simply does not enter free as the tariff provides it should enter.

· The two competing paragraphs are as follows:

PAR. 393. Lead bullion or base bullion, lead in pigs and bars, lead dross, reclaimed lead, scrap lead, antimonial lead, antimonial scrap lead, type metal, Babbitt metal, solder, *all alloys or combinations of lead not specially provided for*, 2⅛ cents per pound on the lead contained therein; lead in sheets, pipe, shot, glazier's lead, and lead wire, 2⅜ cents per pound. [Italics ours.]

PAR. 1555. Composition metal of which copper is the component material of chief value, not specially provided for.

The court below, after stating the issue, said:

It is conceded by the appraiser that the material is composition metal; the Government analyst's report shows copper to be the component material of chief value. Since, therefore, the merchandise under consideration accurately responds to that provided for in said paragraph 1555, we hold it to be properly entitled to free entry under that paragraph, as alleged by the plaintiff.

The Government argued in this court that it was the duty of the importer to prove in the trial below that the importation was "neither an alloy nor a combination of lead"; that paragraph 393 is new and that Congress in the enactment of the paragraph adopted entirely different language from that in the predecessor paragraph 153, Tariff Act of 1913, which was "lead in any form not specially provided for in this section," and that this change in language, as well as the change in language in the free-list provision, imports a change in meaning. The Government also cites decisions of this court in *United States* v. *Consolidated Kansas City Smelting & Refining Co.*, 8 Ct. Cust. Appls. 226, T. D. 37495, and *Lang et al.* v. *United States*, 10 Ct. Cust. Appls. 228, T. D. 38563.

It is true that courts have frequently declared that a change in language of legislative acts imports a change in meaning, but, for reasons which will appear later, we can not see where this rule affects or controls the decision of this case.

A careful consideration of all questions decided and discussed in the two cases cited prompts the conclusion that they are not authority for the result which the Government seeks in the case at bar.

In the *Consolidated Kansas City Smelting & Refining Co.* case, *supra*, the importation consisted of mattes in which the lead content largely predominated in weight over the copper content. They were held not to be regulus of copper under the free-list paragraph 461 of the Tariff Act of 1913, upon the ground that they were not shown to

possess the necessary amount of copper, and not to fall within the provision of paragraph 153 for "lead in any form not specially provided for in this section," but that they were dutiable by similitude under the provision in paragraph 152 for "lead-bearing ores."

In the *Lang* case, *supra*, the importation involved consisted of mattes varying in copper content from 22 to 52 per centum and in similar lead content from 17 to 57 per centum. Some contained gold, silver, platinum, or iridium. In each and all the copper was greater in value than the lead content. They were classified as "lead in any form" under paragraph 153 of the Tariff Act of 1913. They were claimed to be free of duty as regulus of copper under paragraph 461. The lower court evidently held with the collector that the merchandise was "lead in any form." This court reversed the lower court and held that the merchandise was entitled to free entry as "regulus of copper," and that mattes and regulus, for the purposes of the decision, would be regarded as synonymous, and said:

Obviously, in this enactment Congress had in mind that *mattes* frequently, if not always, carried large lead contents; and, being so advised, in one part of the act limited that content to 10 per cent in legislating with reference to certain *mattes*, but, in another part of the act, placed no limit upon the lead content of copper *mattes*, or "regulus of * * * copper," long held the legal and commercial equivalent of copper *matte*. The congressional purpose, then, to not limit the lead content of regulus of copper or copper *matte*, is undeniable; and, until Congress so enacts, it is the duty of this court to decline to read into the act that which Congress, fully advised, did not do. [Italics quoted.]

In the *Lang* case, it is true that the court said:

For the one and only debatable issue is, are the provisions of either paragraph 152 or 153 sufficiently definite and inclusive to be thereby penetrative of paragraph 461, providing for regulus of copper, and therein reach and thereby make dutiable the lead content of the copper matte or regulus made free thereby? If, as we have concluded, this material is not lead "ore" within paragraph 152 and is not "lead in any form" within paragraph 153, that question is conclusively answered in the negative, for in no event are those paragraphs applicable to or do they lay hold of these importations.

From this the Government argues that, if either paragraph 152 or paragraph 153 had described the merchandise, it would have been sufficiently "penetrative" to have reached and made dutiable the lead content in the regulus, and that since, according to its contention, the lead is provided for in paragraph 393 of the present act, the *Lang* case is authority for holding that the lead in the composition metal at bar is dutiable.

The Government overlooks, however, a very important part of the *Lang* decision which is as follows:

Nor is this matte any of the "lead" things enumerated in paragraph 153. All of these enumerations are prefixed by the word "lead." By all the rules of import customs interpretation, then, to come within that paragraph the mer-

chandise must be at least in chief value of lead. The testimony indicates an · apparent exception to the rule in that where the precious metals predominate in value in a matte that does not necessarily extrude therefrom the commercial denomination thereof by the name of the predominating commercial metal, such as lead, copper, or antimony. Regardless of that question, since the copper in each case herein predominates in value over the lead, it is not reasonable that the merchandise should be denominated a "lead" article.

An examination of paragraph 393 shows it to be a lead paragraph, and we must hold that it was not intended by the provision "all alloys or combinations of lead, not specially provided for" to include such metal as is before us. It may be an alloy in one sense and it may be a combination, but we do not regard it as an alloy of lead or a combination of lead within the meaning of paragraph of 393. It is more an alloy of copper or a combination of copper than a lead article. It must be remembered that the paragraph does not say "all alloys or combinations *containing* lead" but "alloys or combinations *of* lead."

Paragraph 1555 is quite specific as applied to this material. "Composition metal of which copper is the component material of chief value" would seem to fit this material exactly and we think it classifiable thereunder.

The judgment of the United States Customs Court is *affirmed*.